UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MOSES SANTOS AND MELODY MORSE,

                Plaintiffs,

                -against-

NETWORK OF AL-QUEDA ATTORNEYS,
RICHARD BLUMBERG, ESQ., RUSSELL
TISMAN, ESQ., FORCHELLI, CURTO, DEEGAN,
SCHWARTZ, MINEO, COHN & TERRANA, LLP,
WANDA SELINGER, ESQ. A/K/A GLANSTEIN,
NASSAU/SUFFOLK LAW SERVICES COMMITTEE,
INC., PAM BOERNER, INDIAN HEART PROPERTIES,
A/K/A/ COLLIN GREENE A/K/A ROBIN COLIN-
GREENE,ESQ., RGOM - RESTHAVEN GARDENS OF
MEMORY, FIND THE RIGHT LAWYER REFERRAL
SERVICE A/K/A ROCHELLE SIMONSON, BOB
CALOY A/K/A WARREN SIMONSON A/K/A BOB
SIMONSON, CHARLES BELFI, BELFI INVESTMENT
GROUP, WILLIAM GOLDMAN SCHER, ESQ., GREGG
WEINSTOCK, ESQ., WILLIAM BUCKLEY, ESQ.,
GARBARINI AND SCHER, ROBERT RADMAN, ESQ.,
LAW OFFICES OF ROBERT RADMAN, JEFFREY
MCNABB, ESQ., LEIGH MICHELE NEMETZ, ESQ.,
MAUREEN REID, ESQ., BAKER BOTTS, SECURITY
SERVICE FEDERAL CREDIT UNION, STEVE
CHAJKEWICZ, JOHN CIAMPOLI, ESQ., COUNTY
OF NASSAU, SHERIFF OF NASSAU COUNTY,
PETER LASERNA, ESQ., LIORA M. BEN-SOREK,
ESQ., GEORGE W. WRIGHT, ESQ., GEORGE W.
WRIGHT & ASSOCIATES, NETWORK MOVING &
TRUCKING CO., INC., NOAH M. WEISSMAN, ESQ.,
VIRGINIA SAYER, ESQ., BRYAN CAVE, CITY
MORTGAGE, DOROTHY O. NESE, ESQ., ANN
ZYBERT, ESQ., DISTRICT COURT OF NASSAU
COUNTY AND THE STATE OF NEW YORK,

                Defendants.
---------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
12-CV-1102 (JFB)(WDW)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 0 5 2012   ★

LONG ISLAND OFFICE

JOSEPH F. BIANCO, District Judge:

Pro se plaintiffs Moses Santos ("Santos") and Melody Morse ("Morse") (together, "plaintiffs") filed their 224 page complaint (exclusive of exhibits)[1] on March 6, 2012 against the forty-one (41) defendants, namely the Network of al-Queda Attorneys ("the Network"), Richard Blumberg, Esq. ("Blumberg"), Russell Tisman, Esq., ("Tisman"), Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP ("Forchelli, LLP"), Wanda Selinger, Esq. a/k/a Glanstein ("Selinger"), Nassau/Suffolk Law Services Committee, Inc. (Nassau/Suffolk Law Services"), Pam Boerner ("Boerner'), Indian Heart Properties a/k/a/ Collin-Greene a/k/a Robin Colin-Greene, Esq. ("Indian Heart"), RGOM-Resthaven Gardens of Memory ("Resthaven"), Find the Right Lawyer Referral Service a/k/a Rochelle Simonson ("Lawyer Referral"), Bob Caloy a/k/a Warren Simonson a/k/a Bob Simonson ("Caloy"), Charles Belfi ("Belfi" or "landlord"), Belfi Investment Group ("Belfi I.G."), William Goldman Scher, Esq. ("Scher"), Gregg Weinstock, Esq. ("Weinstock"), William Buckley, Esq. ("Buckley"), Garbarini and Scher, ("Garbarini"), Robert Radman, Esq. ("Radman"), Jeffrey McNabb, Esq. ("McNabb"), Leigh Michele Nemetz, Esq. ("Nemetz"), Maureen Reid, Esq. ("Reid"), Baker Botts ("Baker"), Security Service Federal Credit Union ("Credit Union"), Steve Chajkewicz ("Chajkewicz"), John Ciampoli, Esq. ("Ciampoli"), County of Nassau ("Nassau County"), Sheriff of Nassau County ("Sheriff"), Peter A. Laserna, Esq. ("Laserna"), Liora M. Ben-Sorek, Esq. ("Ben-Sorek"), George W. Wright, Esq. ("Wright") George W. Wright & Associates ("Wright & Associates"), Network Moving & Trucking Co., Inc. ("Network Moving"), Noah M. Weissman, Esq. ("Weissman"), Virginia Sayer, Esq. ("Sayer"), Bryan Cave, City Mortgage, Dorothy O. Nese, Esq. ("Nese"), Ann Zybert, Esq. ("Zybert"), District Court of Nassau County ("Nassau District Court") and the

---

[1] Plaintiffs annex an additional 78 pages of exhibits to their complaint.

State of New York ("NY State"), purporting to allege that the defendants, individually or in conspiracy, violated a myriad of criminal statutes, including those governing the use of weapons of mass destruction, bombings of places of public use, embezzlement, conspiracy to kill U.S. citizens, espionage, treason and sabotage. Notwithstanding plaintiffs' payment of the filing fee, for the reasons set forth below, their complaint is *sua sponte* dismissed with prejudice.

I.  Background

Morse, who is no stranger to this Court, together with Santos, have filed an unintelligible, 304-page complaint (including exhibits)² comprised of some 2,289 disjointed paragraphs that appear to re-allege various claims of fraud and other illegal conduct including alleged civil rights violations arising from a 2009 summary/nonpayment eviction proceeding in Nassau County District Court involving Morse. Morse had filed a similar action in this Court on June 18, 2010, *Morse v. Boerner, et al.*, 10-CV-2811(JFB)(WDW), against many of the same defendants here. The undersigned *sua sponte* dismissed the 2010 complaint by Order dated July 29, 2010 on various grounds, including that: (1) the Court lacked subject matter jurisdiction; (2) the *Rooker-Feldman* doctrine barred plaintiff's claims; (3) there was no private right of action under the federal criminal statutes that were allegedly violated; and (4) a failure to comply with the requirements of Federal Rule of Civil Procedure 8. However, Morse was afforded leave to file an amended complaint, which she did on August 27, 2010.

Upon careful review, the Court *sua sponte* dismissed the amended complaint, finding that

---

²The Court notes that each page of the complaint, including exhibits, is glued to one another, making it impossible for the Court to separate and scan it for entry on the Court's Electronic Case Filing (ECF) system. Accordingly, by letter dated March 12, 2012, the Court's *Pro Se* Office requested that plaintiffs re-submit the complaint without binding the pages. To date, plaintiffs have not complied with that request. In any event, the Court has fully considered the complaint as submitted.

Morse's federal claims were frivolous. *See* Memorandum and Order, dated August 10, 2011, Bianco, D.J. Morse appealed that decision, and, by Order Dated January 11, 2012 the United States Court of Appeals for the Second Circuit dismissed the appeal "because it lack[ed] an arguable basis in law or fact." *See Morse v. Belfi Investment Group, et al.*, 11-CV-3662. Morse filed a motion for reconsideration of that dismissal and, by order dated January 27, 2012, the panel that dismissed her appeal denied motion for reconsideration. The instant complaint followed.

II. The Instant Complaint

Though largely unintelligible, the Court can best discern that plaintiffs allege that a network of lawyers, judges and other public officials are conspiring to assist terrorist organizations, particularly al-Queda. Plaintiffs appear to allege that the rental house in which Morse lived and that was the subject of the underlying state court eviction proceeding was actually "one of al-Queda network's house rentals [used to house Sleeper Cells or alternately to kill unsuspecting Americans by poison - Carbon Monoxide]." Comp. at ¶ 104. Plaintiffs allege that the underlying eviction proceeding involving Morse was "due to the forgery, fraud, and fraudulent misrepresentation of another party not in the submitted paperwork . . . . *Id.* at ¶ 7. As a result of the dismissal of Morse's federal complaint challenging the state court eviction proceeding, plaintiffs claim that the undersigned "helped clear the way for the National Network of al-Queda Attorneys' invasion plans still to come." *Id.* at ¶ 13.

Plaintiffs appear to claim that Morse was entitled to a default judgment in the earlier federal action and, because of the conspiracy amongst the defendants and the Court (due to their alleged al-Queda connection), no default judgment was entered. *Id.* at ¶ 19-29. According to the
4

Complaint, "Tisman admitted by fraud that he represented an al-Queda agent and still the Judge let him win." *Id.* Plaintiffs allege that Boerner is a real estate agent in Texas who is also an al-Queda agent. *Id.* at ¶ 15. Plaintiffs also appear to allege that the undersigned is an "al-Queda agent of the Network of al-Queda Attorneys and a double-agent for al-Queda under the guise of America." *Id.* at ¶¶ 19, 107-08.

The Complaint continues:

> Upon information and belief, the trail keeps returning to COUNTY OF NASSAU. Why is a Municipality, using taxpayer money to hire an assassin with other attorneys and defendants, using taxpayer money for treason, have a connection with Saudi Arabia maybe for guns and get money in return. They are supposed to work for the citizens of Nassau County, not become a terrorist organization with taxpayer money. They know about tax fraud and as long as they receive a money kick back they do not object to breaking the law.
>
> . . .
>
> . . . since SSFCU[3] is receiving money from a dead person, as stated in death certificate [], they must be in the business of laundering money to the al-Queda network of Sleeper Cells. . . . [A]n abundance of houses are owned in Texas, New York and all across the country, using the wealth of American real estate to launder and fund money through SCCFU in San Antonio, Texas to Rochester, New York Saudi Arabian owned-Citibank's fraudulent company name, "CITY MORTGAGE" [real name "CitiMortgage"] and who knows what else is being traded to al-Queda to wage war against all Americans. They are using us to fund them for our demise. Wake up and smell the coffee.

Compl. at ¶¶ 40-41.

Plaintiffs allege that:

> . . . State of New York Attorney Generals [sic] Dorothy O. Neses [sic] and Ann Zybert, Assistant Solicitor General did conspire with

---

[3]"SSFCU" refers to defendant Security Service Federal Credit Union. *See* Compl. at ¶ 36.

> other attorneys in the prior two cases, knowing it was for illegal
> purpose to fund the enemy of the U.S., al-Queda for a percentage
> of the profit and knowing the law was being broken but did nothing
> to object or stop it. . . . [A] team of investigators were [sic] hired
> due to the very strange and uncooperative behavior coming from
> Judge Bianco in addition to the fact that it appeared that law has
> been outlawed by price alone.

*Id.* at ¶¶ 47-48. According to the complaint, Boerner, who is alleged to use several aliases, "is working directly with BLUMBERG, TISMAN and all the partners in FORCHELLI to recruit attorneys for the NETWORK OF AL-QUEDA ATTORNEYS furthering the cause of al-Queda Sleeper Cells living in America to become operative at some point in time." *Id.* at ¶ 60. Plaintiffs also claim that Blumberg and Tisman, together with Resthaven Gardens of Memory graveyard, conspired to re-use social security numbers of deceased individuals "for al-Queda Sleeper Cells identification as well as new occupations are provided for them." *Id.* at ¶ 65. Plaintiffs describe that "coffins are being used to transport Sleeper Cells, using oxygen tanks, WITH NO ONE LOOKING, as well as transporting WEAPONS OF MASS DESTRUCTION (USA PATRIOT ACT § 2331b), that is bypassing Customs, Border Patrols, and the Military. It appears that they are waiting for an invasion." *Id.* at ¶ 68. Plaintiffs theorize that

> one possible scenario would be that, with lawyers on board in
> Network of al-Queda Attorneys, they could slip into Federal Court
> houses to leave bombs to coordinate simultaneously across
> America and at the same time, destroy our military bases; leaving
> civilians to fight back against armed troops. . . . I pray to God that
> this will not happen. I think when 911 hit, the fact no intelligence
> agencies were taking to each other has revisited us, 'AGAIN!'

*Id.* at ¶¶ 69-70. Because plaintiffs allegedly had evidence of "what was happening with the Network of al-Queda Attorneys", plaintiffs called the FBI and reported to agent Christopher Martinez that Tisman had threatened plaintiffs' lives. According to the complaint, that call was

transferred to the "Terrorist Hotline." Apparently dissatisfied with the Hotline's response, plaintiffs wrote a "motion stating Misprision of Treason and that the Appellants were al-Queda to Chief Judge Dennis Jacobs. His response was to sent U.S. Marshal Deputies Weiss and Doyle to harass and confront plaintiffs . . . in December 2011 in West Hempstead, Long Island." *Id.* at ¶¶ 72-74. Plaintiffs "shudder to think what will happen if IMMEDIATE ACTON is not taken" because "the most disturbing fact . . . is that all graveyards are situated next to HUGE Military bases that include Army, Navy, Marine, National Guard, etc. . . . and have close proximity to Federal Court Houses Nationwide. . . . [T]hese graveyards have a mansion-sized building that appear to be more like a conference hall size for Sleeper cells than a normal sized place for respectable funerals." *Id.* at ¶¶ 75-77. Plaintiffs further speculate that it is no "coincidence that Army Psychiatrist Maj. Nidal Malik Hasan from Fort Hood that killed 12 people wounding 31 people was less than 3 hours south to Comfort, Texas, location of PAM BOERNER." *Id.* at ¶ 78.

Plaintiffs also complain about the adequacy of security at the federal courthouse in Brooklyn. Plaintiffs describe that attorneys are permitted to keep their briefcases and cell phones while non-lawyers must check their cell phones with the security desk upon entering the building. Accordingly, plaintiffs allege that "[i]t would not be surprising for a fake Sleeper Cell to dress up in a suit like a lawyer, have fake ID, and have a bomb that can be detonated by a phone - - it is an accident waiting to happen; due to the current extra privileges afforded to attorneys." *Id.* at ¶ 80.

The complaint continues in this fashion for an additional 144 pages. Their diatribe includes allegations that court personnel at both the United States District Court for the Eastern

District of New York and the U.S. Court of Appeals are "at the center of the hurricane of al-Queda in America and have engaged in acts of sabotage, espionage and treason." *Id.* at ¶¶ 81, 87-93, 109-118, 153. Further, all defendants are alleged to have "conspired to kill Plaintiff, Melody Morse." *Id.* at ¶ 103, 119. Accordingly, plaintiffs claim that "it is necessary for the Military Law to temporarily takeover to restore order when laws in the courts break down. For without law, we have anarchy and chaos. . . . [A]uthority to try civilians under military jurisdiction depends on whether wartime is declared. Congress has enacted war on al-Queda with the 2001 Bombing on the World Trade Center and it has been going on ever since." *Id.* at ¶ 137. "[W]e have been at war with al-Queda for 10 years now, since 2001. Just as with the Cold War when Soviet spies were everywhere in America; they were even on the North Shore of Long Island. . . . [I]t would be ridiculous and foolish to think that they would not infiltrate a try to influence people in our own government and the country. They are not only Arabs anymore. Now they are Americans, and how do we find them without becoming a Military state?" *Id.* at ¶¶ 146-47.

Based on the foregoing, plaintiffs assert the following causes of action: treason, conspiracy, espionage and sabotage, spying, knowingly filing false reports, scheme to defraud, knowingly traffics false and forged identification documents, bombings of place of public use, use of weapons of mass destruction, conspiracy to attempt murder, embezzlement of funds, impersonating a citizen, receiving military-type training from a foreign terrorist organization, perjury, 14th amendment due process violations, money laundering, financial transactions, suspension and disbarment of attorneys eligible for admission to the bar and racketeering. Plaintiffs seeks to recover a damages award totaling sixty six trillion, six hundred and thirty five

billion dollars ($66,635,000,000), apportioned among the forty-one defendants. *Id.* at ¶¶ 1515-2289.

II. DISCUSSION

A. <u>Standard of Review</u>

It is well-established that a district court is required to hold *pro se* complaints to less stringent standards than pleadings drafted by attorneys and the Court is required to read a *pro se* complaint liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)(citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)); *Chavis v. Chappius*, 618 F.3d 162 (2d Cir. 2010), and to construe them "'to raise the strongest arguments'" suggested. *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Irrespective of whether they are drafted *pro se*, all complaints must contain at least "some minimum level of factual support for their claims . . . ." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). Further, a district court has the inherent power to dismiss a case *sua sponte* if it determines that the action is frivolous, regardless of whether a plaintiff has paid the filing fee. *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (a district court may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee); *see also Hawkins-El III v. AIG Federal Savings Bank*, 334 F. App'x 394, 395 (2d Cir. June 18, 2009) (affirming district court's *sua sponte* dismissal of fee paid frivolous complaint); *Paige v. City of New York*, No. 10-CV-5469 (SLT)(RER), 2011 WL 3701923, *2 (E.D.N.Y. Aug. 23, 2010) (even where a pro se plaintiff "has paid the filing fee, a district court has the inherent power to dismiss a case, sua sponte, if it determines that the action is frivolous or that the court lacks jurisdiction over the matter"); *Reyes*

9

v. *Reyes*, No. 11-CV-2536 (KAM), 2011 WL 3625562, *2 (E.D.N.Y. Aug. 16, 2011) (dismissing fee paid complaint *sua sponte*); *Gianello v. Port Authority of N.Y. and N.J.*, No. 11 Civ. 3829 (JGK), 2011 WL 2436674 (S.D.N.Y. June 16, 2011) ("The Court has the authority to dismiss *sua sponte* a complaint, or portion thereof, for which a plaintiff has paid the filing fee where the plaintiff presents no arguably meritorious issue.").

An action is "frivolous" when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 118 L. Ed.2d 340 (1992); *see also Scanlon v. Vermont*, 423 Fed. App'x 78, 79 (2d Cir. 2011) (summary order) ("An action is frivolous if it lacks an arguable basis in law and fact - i.e., where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [which] are clearly baseless.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed.2d 338 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

As readily apparent from the substance of the complaint, the claims in this case "rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. Upon a casual reading of plaintiffs' complaint, the allegations presented appear wholly incredible and can only be described as the "product of delusion or fantasy." *Livingston*, 141 F.3d at 437. Construing plaintiffs' complaint liberally and raising the strongest arguments they suggest,

*Burgos v. Hopkins*, 14 F.3d 787, 780 (2d Cir. 1994), the Court finds that plaintiffs allegations rise to the level of irrational and wholly incredible. In short, having reviewed the complaint, it is clear that plaintiffs' claims are factually frivolous, "rising to the level of the irrational or wholly incredible," *Denton*, 504 U.S. at 26, and are dismissed. *Baron v. Complete Management, Inc.*, 260 F. App'x 399 (2d Cir. 2008) ("dismissal is appropriate where, as where, a complaint is a 'labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension'") (quoting *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972)) (*per curiam*); *Rossman v. Stelzel*, No. 11-CV-4293(JS)(ETB), 2011 WL 4916898 (E.D.N.Y. Oct. 13, 2011) (*sua sponte* dismissing frivolous fee paid *pro se* complaint); *Gelish v. Social Sec. Admin.*, No. 10-CV-3713 (JS), 2010 WL 3780372, at *4 (E.D.N.Y. Sept. 17, 2010) (*sua sponte* dismissing *pro se* plaintiff action for "rising to the level of irrational or wholly incredible") (quoting *Denton*, 504 U.S. at 26); *Awan v. Awan*, No. 10-CV-0635 (JS)(ARL), 2010 WL 1265820 (E.D.N.Y. Mar. 26, 2010) (same); *see also Mecca v. U.S. Government*, 232 F. App'x 66, 677 (2d Cir. 2007) (affirming district court dismissal of complaint that was "replete with fantastic and delusional scenarios"). The Court has considered affording plaintiff an opportunity to amend the complaint, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but declines to do so finding that the deficiencies therein are not such that could be cured by amending the complaint. *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002).

B.   The All Writs Act

The Court has the obligation to protect the public and the efficient administration of justice from litigants who have a history of filing vexatious and harassing complaints because of the needless expense imposed on the parties and the unnecessary burden on the court. *Lau v.*

*Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). The All Writs Act, 28 U.S.C. § 1651, permits a court, under certain circumstances, to sanction a vexatious litigant who abuses the judicial process by enjoining him or her from pursuing future litigation without first obtaining leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69–70 (2d Cir. 1997); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004); *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999), *see also Sullivan v. Hyland*, 647 F. Supp.2d 143, 161-62 (D. Conn. 2009). Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits. *See, e.g., Malley v. New York City Board of Educ.*, 112 F.3d 69 (2d Cir. 1997) (*per curiam*) (filing injunction may issue if numerous complaints filed are based on the same events); *In re Martin-Trigona*, 9 F.3d 226, 227-28 (2d Cir. 1993). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction. *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam); *MLE Realty*, 192 F.3d at 261.

Although this is plaintiff melody Morse's second frivolous lawsuit regarding the same subject matter, the Court in its discretion does not believe that the drastic sanction of a litigation injunction, or any other sanction, is warranted at this juncture, especially because the Court was able to dispose of this lawsuit in a *sua sponte* order, without a formal motion by the defendants. However, the Court is concerned, given the instant action, together with docket number, 10-CV-2811, that plaintiffs may try to file a new action against these defendants again seeking redress for the alleged wrongdoing surrounding the eviction of Morse from her rental home West Hempstead, New York following a proceeding in the District Court, Nassau County. However,

plaintiffs continued filing of frivolous complaints relating to this issue would constitute an abuse of the judicial process. Given the court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel," *Lau*, 229 F.3d at 123, plaintiffs are warned that similar, future complaints will not be tolerated. If plaintiffs persist in this course of action, the Court will require that plaintiffs show cause why they should not first seek leave of Court before submitting such filings.

Finally, plaintiffs are cautioned that Federal Rule of Civil Procedure 11 applies to *pro se* litigants, *Ginther v. Provident Life and Cas. Ins. Co.*, 350 Fed. App'x 494, 496 (2d Cir. 2009) (upholding a district court's imposition of sanctions against a *pro se* litigant), and that should they file another frivolous complaint, it is within the court's realm to consider sanctions. *See* Fed. R. Civ. P. 11.

IV. CONCLUSION

For the reasons set forth above, the frivolous complaint is *sua sponte* dismissed.[4] The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962). The Clerk of the Court is directed to close the case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: April 5, 2012
Central Islip, New York

---

[4] On March 9, 2012, plaintiffs filed a motion to have this case reassigned to a Judge in the Brooklyn Courthouse. The Court construes that motion to be a motion for recusal, and that motion is denied because there is no basis for recusal. Moreover, the plaintiffs' several requests for certificates of default are also moot, and, in any event, without merit.